# No. 24-1027

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE:

ESSENTIAL NETWORK TECHNOLOGIES LLC AND METCOMM.NET, LLC

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
AND THE UNITED STATES OF AMERICA,

*Respondents*.

## PETITION TO REVIEW, OR ALTERNATIVELY, PETITION FOR WRIT OF MANDAMUS TO COMPEL AGENCY ACTION UNREASONABLY DELAYED

James U. Troup
FLETCHER, HEALD & HILDRETH
1300 N. 17th Street, 11th Floor
Arlington, VA, 22209
Telephone: (703) 812-0442
Facsimile: (703) 812-0486
Email: troup@fhhlaw.com

*Attorney for ESSENTIAL NETWORK
TECHNOLOGIES LLC AND METCOMM.NET, LLC*

Date: February 14, 2024

{01701827-4 }

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES ......................................................... iii

GLOSSARY OF ABBREVIATIONS ......................................................1

JURISDICTIONAL STATEMENT ......................................................1

    A.    Petition to Review ...............................................1

    B.    Petition for Writ of Mandamus ....................................5

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................10

STATUTES AND REGULATIONS .....................................................11

STATEMENT OF THE CASE.........................................................11

    A.    Regulatory Background..........................................11

    B.    Essential Network Technologies LLC  ...........................13

    C.    MetComm.Net, LLC  ............................................16

SUMMARY OF THE ARGUMENT .....................................................20

STANDING .......................................................................23

ARGUMENT .......................................................................24

I.    Section 254(h)(1)(B) of the Communications Act Prohibits the FCC and its Non-Government Agent, USAC, From Stopping Funds for the Discounts on Services that Have Already Been Promised Under Contracts with the Schools. ..........................................24

II.    The Failure of the FCC to Render a Decision Regarding USAC's Investigations Within a Reasonable Time Has Violated the APA and the Procedural Rights Guaranteed by the Fifth Amendment to the U.S. Constitution.................................................................27

III.    If this Court Denies the Petition to Review, the Court Should Grant a Writ of Mandamus Directing the FCC to Comply with its Statutory

Duties to Reimburse Discounts and Promptly Render an FCC
Decision Regarding USAC's Investigations. ..................................................32

CONCLUSION ....................................................................................................35

CERTIFICATE OF COMPLIANCE........................................................................37

CERTIFICATE OF SERVICE ................................................................................38

ADDENDUM

Certificate as to Parties, Rulings, and Related Cases ........................................... A-4

    A.    Parties and Amici ............................................................................. A-4

    B.    Rulings Under Review ..................................................................... A-4

    C.    Related Cases .................................................................................. A-6

Rule 26.1 Disclosure Statement ........................................................................... A-6

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Page(s)

*Adams v. Richardson,*
  480 F.2d 1159 (D.C. Cir. 1973) ............................................................5

*Bhd. Locomotive Eng'rs and Trainmen v. Fed. R.R. Admin.,*
  972 F.3d 83 (D.C. Cir. 2020) ...............................................................2

*Coit Indep. Joint Venture v. Fed. Sav. and Loan Ins. Corp.,*
  489 U.S. 561 (1989) ............................................................................7

*Columbia Broad. Sys. v. United States,*
  316 U.S. 407 (1942) ..................................................................... 2, 4, 9

*Consumers' Rsch. v. FCC,*
  67 F.4th 773 (6th Cir. 2023) ...............................................................7

*Environmental Defense Fund, Inc. v. Ruckelshaus,*
  439 F.2d 584 (D.C. Cir. 1971) ............................................................5

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ..........................................................................27

*Functional Music, Inc. v. FCC,*
  274 F.2d 543 (D.C. Cir. 1958) ............................................................4

*Goldberg v. Kelly,*
  397 U.S. 254 (1970) ..................................................................... 28, 29

*In re Ctr. for Biological Diversity,*
  53 F.4th 665 (D.C. Cir. 2022) ...................................................... 32, 34

*In re Incomnet, Inc.,*
  463 F.3d 1064 (9th Cir. 2006) ..........................................................26

*In re Pub. Emps. For Env't,*
  *Resp.,* 957 F.3d 267 (D.C. Cir. 2020) ..............................................34

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ..........................................................................23

*Maine Cmty. Health Options v. United States*,
  143 Fed. Cl. 381 (2019) ...................................................................25

*MCI Telecomms. Corp. v. FCC,*
  627 F.2d 322 (D.C. Cir. 1980) .....................................................7, 28

*Nat'l Ass'n of Regul. Util. Comm'rs v. FCC*,
  737 F.2d 1095 (D.C. Cir. 1984) .......................................................29

*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ...........................................................9

*Potomac Elec. Power Co. v.* ICC,
  702 F.2d 1026 (D.C. Cir. 1983) .........................................................6,

*Pub. Citizen Health Rsch. Grp. v. Auchter,*
  702 F.2d 1150 (D.C. Cir. 1983) .........................................................6

*Scripps-Howard Radio, Inc. v. FCC*,
  316 U.S. 4 (1942) ...............................................................................2

*Telecom Research & Action Ctr v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984) ................................................. 6, 33, 34

*U.S. Tr. Co. of New York v. New Jersey*,
  431 U.S. 1 (1977) .............................................................................25

## REGULATORY AGENCY DECISION

*In the Matter of Modernizing the E-rate Program for Schools and Libraries*,
  29 FCC Rcd. 8870 (2014) ................................................................11

## U.S. CONSTITUTION

U.S. Const. amend. V .................................................................................28

U.S. Const. art. III ....................................................................................23

## FEDERAL STATUTES

5 U.S.C. § 555(b) ........................................................................ 6, 28, 33

5 U.S.C. § 705 .........................................................................................2, 5

5 U.S.C. § 706 ................................................................................. 6, 24, 27

28 U.S.C. § 1651(a) ........................................................................ 5, 6, 22, 33

28 U.S.C. § 2342(1) .............................................................................1, 5

31 U.S.C.§ 3701(b)(1) ..........................................................................25

47 U.S.C. § 151 ...................................................................................29

47 U.S.C. § 154(k) .......................................................... 5, 22, 32, 34, 35

47 U.S.C. § 254 ............................... 1, 5, 6, 9, 10, 20, 22, 24, 32, 34

47 U.S.C. § 402(a) ........................................................................ 1, 2, 5

47 U.S.C. § 404 .............................................................. 5, 22, 32, 34, 35

47 U.S.C. § 1302(b) .............................................................................12

## FEDERAL REGULATIONS

47 C.F.R. § 1.1901 ...............................................................................25

47 C.F.R. § 54.702(c) ............................................................................7

47 C.F.R. § 54.707(a) ................................................... 2, 3, 4, 10, 21, 26

47 C.F.R. § 54.719 .................................................................................8

47 C.F.R. § 54.724(b) .............................................................................8

47 C.F.R. § 54.725(a) .................................................. 2, 3, 4, 10, 21, 26

## FEDERAL RULES OF APPELLATE PROCEDURE

Fed. R. App. P. 21 ................................................................................37

Fed. R. App. P. 32 ................................................................................37

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| APA | Administrative Procedure Act |
| FCC | Federal Communications Commission |
| IT | Information Technology |
| USAC | Universal Service Administrative Company |

## JURISDICTIONAL STATEMENT

### A.     Petition to Review

By ignoring Congress' command  in 47 U.S.C. § 254(h)(1)(B) to issue funding for the discounted services provided to schools by Essential Network Technologies LLC and MetComm.Net, LLC,[1] while unreasonably delaying any meaningful decision in this case, the FCC has caused and continues to cause irreparable harm to Essential Network Technologies LLC, MetComm.Net, LLC, numerous elementary and secondary schools, their students, and the public contrary to the Communications Act, the Administrative Procedure Act ("APA"), and the Fifth Amendment to the United States Constitution.

This Court has jurisdiction over the subject matter of this action pursuant to the Hobbs Act, 28 U.S.C. § 2342(1), and the Communications Act, 47 U.S.C. § 402(a), which provide the United States courts of appeals "exclusive

---

[1] 47 U.S.C. § 254(h)(1)(B) states in part: "All telecommunications carriers…shall, upon a bona fide request… provide such services to elementary schools, secondary schools, and libraries for educational purposes at rates less than the amounts charged for similar services to other parties…A telecommunications carrier providing service under this paragraph shall…receive reimbursement utilizing the support mechanisms to preserve and advance universal service."

jurisdiction" to review the application of rules adopted by the Federal

Communications Commission ("FCC") in a final order exercising its rule-making

power. "Such regulations …have the force of law and are orders… reviewable

under § 402(a)." *Columbia Broad. Sys. v. United States*, 316 U.S. 407, 417 (1942).

The Hobbs Act grants this Court jurisdiction to review the FCC's application of its

rules, even though passively approved, when such agency action "imposes an

obligation, denies a right, or fixes some legal relationship."[2] Furthermore, section

402 of the Communications Act permits this Court to stay or enjoin FCC actions to

avoid irreparable injury to the public interest while an appeal is being heard.[3]

Section 705 of the APA also authorizes this Court to issue an injunction "to

preserve status or rights."[4]

Essential Network Technologies LLC and MetComm.Net, LLC seek review

of 47 C.F.R. §§ 54.707(a) and 54.725(a) as those rules are being applied to them

by the FCC through the FCC's non-government agent, the Universal Service

---

[2] *Bhd. Locomotive Eng'rs and Trainmen v. Fed. R.R. Admin*., 972 F.3d 83, 99 (D.C. Cir. 2020) (citations omitted). The FCC cannot evade judicial review just by declining to formally paper the FCC's actions denying statutorily mandated reimbursement, as such a practice "would create an agency-controlled end-run of the Hobbs Act." *Id*. at 102

[3] "If the administrative agency has committed errors of law… judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made." *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 10 (1942).

[4] 5 U.S.C. § 705.

Administrative Company ("USAC"). After elementary and secondary schools selected Essential Network Technologies LLC and MetComm.Net, LLC to provide discounted information technology ("IT") services, USAC stopped issuing funds for the discounts despite section 254(h)(1)(B)'s clear and unambiguous statutorily required reimbursement.[5] By not acting on these claims to fund the discounts and, in the case of MetComm.Net LLC, failing to provide reimbursements for services already provided, the FCC, and its non-government agent, USAC, are amending the Congressional statute.

While USAC has never provided notice identifying what FCC rule has allegedly been violated or the legal basis for failing to act on claims to fund the schools' discounts, USAC appears to be relying upon FCC rules 54.707(a) and 54.725(a) as authority to refuse funding for the schools' discounts.[6] USAC stopped the funding of discounts for several schools for services provided by MetComm.Net LLC, beginning in 2021 and for services to be provided by Essential Network Technologies LLC in 2020. USAC sent letters to Essential Network Technologies LLC in 2022 and to MetComm.Net, LLC in 2023

---

[5] *See* Addendum, (Joseph Walsh Decl.); (Solly Avi-No'am Decl.).
[6] Rule 54.707(a) states in part USAC "may suspend or delay discounts …if the carrier fails to provide adequate verification of discounts" and rule 54.725(a) states in part USAC "shall not reimburse a service provider for the provision of discounted services until a final decision" on an appeal of a USAC decision.

indicating USAC was reviewing discounts provided years ago to schools.[7]  This

petition does not seek this Court's review of the merits, if any, of USAC's

investigations.

This is not a facial challenge to 47 C.F.R. §§ 54.707(a) and 54.725(a), but

instead Essential Network Technologies LLC and MetComm.Net, LLC request

judicial review of rules 54.707(a) and 54.725(a), as they have been applied to

Essential Network Technologies LLC and MetComm.Net, LLC contrary to law.

*Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958).  *Functional

Music* explained "administrative rules and regulations," unlike some other types of

final agency action, "are capable of continuing application," and "limiting the right

of review of the underlying rule would effectively deny many parties ultimately

affected by a rule an opportunity to question its validity." *Id.*  "Such regulations

have the force of law before their sanctions are invoked as well as after."

*Columbia Broad. Sys. v. United States*, 316 U.S. at 418-9.

---

[7] Letter from Fabio Nieto, Special Compliance Reviewer, Universal Serv. Admin. Co., to Trisha Wilde, Essential Network Technologies LLC (Feb. 3, 2022); Letter from Bill Kanyuck, Special Compliance Reviewer, Universal Serv. Admin. Co., to Dipa Rathod, MetComm.Net, LLC (Mar. 29, 2023); two Letters from Bill Kanyuck, Special Compliance Reviewer, Universal Serv. Admin. Co., to Rafeek Mohamed, Islamic Elementary School Dec. 11, 2023); Letter from EPC.Application.Administrator@usac.org, Universal Serv. Admin. Co., to Dipa Rathod, MetComm.Net, LLC (Dec. 15, 2023) [collectively hereinafter *Rulings Under Review*].  These *Rulings Under Review* are attached in the Addendum.

### B.    Petition for Writ of Mandamus

Alternatively, should this Court determine that 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a) do not confer jurisdiction or are incapable of providing expeditious relief, Essential Network Technologies LLC and MetComm.Net, LLC request this Court prevent further immediate and irreparable harm by issuing an injunction and writ of mandamus directing the FCC to promptly issue funds for the discounts for schools which selected Essential Network Technologies LLC and MetComm.Net, LLC.  This Court has the power to order the FCC to carry out its clear statutory duty under 47 U.S.C. § 254(h)(1)(B) to reimburse discounts provided to schools.[8] This petition also requests this Court direct the FCC within 90 days to render decisions regarding USAC's investigations and to make the written reports required by 47 U.S.C. §§ 154(k) and 404.

This Court has jurisdiction to issue an injunction to prevent further irreparable harm and a writ of mandamus to compel FCC action that has been unreasonably delayed pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the APA, 5 U.S.C. §§ 705 and 706(1).  Once a proceeding has been instituted with an agency that might lead to an appeal, courts may issue writs of mandamus to

---

[8] When agency recalcitrance is in the face of a clear statutory duty, this Court has the power to order the agency to act to carry out its substantive statutory mandates. *Adams v. Richardson,* 480 F.2d 1159 (D.C. Cir. 1973) *(en banc) (per curiam); Environmental Defense Fund, Inc. v. Ruckelshaus,* 439 F.2d 584, 594–595 (D.C. Cir. 1971).

compel agency action and to preserve the court's prospective jurisdiction. "[I]f review is denied until the Commission's decision, there will be no effective remedy for the parties harmed by the Commission's delay, even if that delay directly contravenes the intent of Congress" in enacting 47 U.S.C. § 254(h)(1)(B).[9] Since this possibility directly affects the scope of this Court's future jurisdiction over any appeal of an eventual final order of the FCC, section 1651(a) permits the Court to determine whether mandamus is proper in these circumstances to order the FCC to proceed forthwith to a decision.

This Court has found it beyond dispute it has jurisdiction over claims of unreasonable FCC delay. *Telecom Research & Action Ctr v. FCC,* 750 F.2d 70, 76 (D.C. Cir. 1984). The APA mandates agencies decide matters in a reasonable time, and Congress has instructed courts to compel agency action that has been unreasonably delayed. *See* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"); 5 U.S.C. § 706(1) (the reviewing court "shall ... compel agency action unlawfully withheld or unreasonably delayed").[10]

---

[9] *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1032 (D.C. Cir. 1983).

[10] These provisions give courts authority to review ongoing agency proceedings to ensure they resolve the questions in issue within a reasonable time. *Pub. Citizen Health Rsch. Grp. v. Auchter,* 702 F.2d 1150, 1158 (D.C. Cir. 1983); *Potomac*

Essential Network Technologies LLC and MetComm.Net, LLC are not required to exhaust the FCC's current administrative procedures before filing suit because those procedures do not provide an adequate remedy. "Administrative remedies that are inadequate need not be exhausted." *Coit Indep. Joint Venture v. Fed. Sav. and Loan Ins. Corp*., 489 U.S. 561, 587 (1989).

The current administrative procedure is inadequate because USAC lacks authority to decide any of the legal issues in this case. 47 C.F.R. § 54.702(c) states USAC "may not make policy, interpret unclear provisions of the statute or rules, or interpret the intent of Congress." "The FCC has not afforded USAC any authority to make actual decisions or establish or define standards." *Consumers' Rsch. v. FCC*, 67 F.4th 773, 796 (6th Cir. 2023). Therefore, any appeal filed with USAC is a futile exercise and exacerbates the unreasonable delay in an FCC decision and judicial review.

Exhaustion of USAC's administrative process is also not required because the FCC's rules do not place a clear and reasonable time limit on USAC's deliberations. *Coit Indep. Joint Venture v. Fed. Sav. and Loan Ins. Corp*., 489 U.S. at 587. No time limit is established in the FCC's rules for a decision by USAC prior to an appeal to the FCC. Furthermore, the FCC's rules do not limit how long

---

*Elec. Power Co. v. ICC*, 702 F.2d at 1034); *MCI Telecomms. Corp. v. FCC,* 627 F.2d 322, 340 (D.C. Cir. 1980).

the FCC may extend the time for the FCC to issue a final decision that can be reviewed by this Court.

The FCC's rules require a final decision by USAC before a request can be filed with the FCC for the FCC's *de novo* review.[11]  However, no time limit is established by the FCC's rules for USAC's consideration.  If and when USAC renders a final decision, the FCC may issue a written decision within 90 days of a request for review, unless the FCC decides to extend the time period for taking action.[12] No time limit is established for the FCC's final decision when the FCC extends the period for review beyond 90 days.

Essential Network Technologies LLC and MetComm.Net, LLC will suffer continuing injury due to the FCC's impermissible practice of stopping the funding of the schools' discounts followed by the unreasonable or even indefinite delay in a USAC or FCC decision.  These procedures give USAC and the FCC virtually unlimited discretion to bury claims for discount reimbursement in the administrative process and stay judicial proceedings for an unconscionably long period of time.  Because Essential Network Technologies LLC and MetComm.Net, LLC rely heavily and frequently on receiving E-rate funding for the services they provide, their primary conduct of providing affordable broadband and critical

---

[11] 47 C.F.R. § 54.719(a).
[12] 47 C.F.R. § 54.724(b).

infrastructure to schools is, and will continue to be, adversely affected by the FCC's impermissible practice.[13]  The public interest will be served "in having the legality of the practices settled."[14]

Only immediate and direct access to the courts can prevent further irreparable injury.  The FCC's failure to provide timely funding decisions for service discounts, as mandated by 47 U.S.C. § 254(h)(1)(B), is causing Essential Network Technologies LLC and MetComm.Net, LLC to lose schools as customers, and is harming their reputations as reliable providers of broadband and related IT services to those schools.[15]  The lack of a reasonable time limit in the current administrative procedure is also depriving numerous schools, their students, and the public of affordable high-speed broadband and IT infrastructure that the FCC has determined is crucial to support bandwidth-intensive digital learning, interactive content, distance learning and collaboration, and robust internet

---

[13] Walsh Decl. ¶ 18; Avi-No'am Decl. ¶ 17.

[14] *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (citations omitted).

[15] Walsh Decl. ¶ 16; Avi-No'am Decl. ¶ 16.  The schools' cancellation, or threat to cancel, the contracts with Essential Network Technologies LLC and MetComm.Net, LLC, induced by the FCC rules precluding discount reimbursement, constitutes irreparable injury, which cannot be avoided by exhausting the administrative procedures.  *Columbia Broad. Sys. v. United States*, 316 U.S. at 423.

access.[16]  By the time the FCC's administrative procedure is exhausted, this

irreparable harm will have already been inflicted and will be irreversible.

### STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The following issues are presented for review:

1.    Is the FCC violating section 254(h)(1)(B) of the Communications Act,

47 U.S.C. § 254(h)(1)(B), by stopping the issuance of funds for the schools'

discounts prior to an FCC decision?

2.    Is the FCC's failure to require USAC to conclude its investigations

within a reasonable time, coupled with years of non-compliance with section

254(h)(1)(B)'s reimbursement command, depriving Essential Network

Technologies LLC and MetComm.Net, LLC of their constitutional right under the

Fifth Amendment's Due Process Clause to prepare an adequate defense?

3.    To the extent USAC has stopped funding the schools' discounts

pursuant to 47 C.F.R. §§ 54.707(a) and 54.725(a), are those FCC rules contrary to

Congress' command in section 254(h)(1)(B) to provide timely discount

reimbursement?

4.    Did the United States breach its contractual obligation to issue funds

for the schools' discounts after Essential Network Technologies LLC and

MetComm.Net, LLC accepted section 254(h)(1)(B)'s invitation to enter into

---

[16] Walsh Decl. ¶ 21; Avi-No'am Decl. ¶ 19.

contracts with the schools to provide eligible broadband and IT service at a

discount?

5.      If the Court denies the petition to review, should the Court grant a writ of

mandamus directing the FCC to comply with its statutory duties to issue funds for

the schools' discounts and conclude USAC's investigations within a reasonable

time?

## STATUTES AND REGULATIONS

Relevant statutes and regulations are reproduced in this petition's addendum.

## STATEMENT OF THE CASE

### A.      Regulatory Background

Section 254 of the Telecommunications Act of 1996 established the E-rate

program as part of the Universal Service Fund.  The E-rate program provides

financial support for connectivity to schools and within schools, and has been

instrumental in providing students with access to the high-speed broadband schools

need for bandwidth-intensive digital learning.[17] The FCC has determined "[a]ccess

to high-speed broadband is crucial to improving educational experiences and

expanding opportunities for all of our nation's students, teachers, parents and

communities."[18]  Unfortunately, "in some areas today, schools and libraries are

---

[17] *In the Matter of Modernizing the E-rate Program for Schools and Libraries*, 29
FCC Rcd. 8870, 8875 ¶ 10 (2014).
[18] *Id*. at 8872 ¶ 1.

unable to afford high-speed broadband services or the services they can afford provide insufficient bandwidth to support digital learning or provide their patrons with robust Internet access."[19] If the FCC determines high-speed broadband is not being deployed "to all Americans (including, in particular, elementary and secondary schools and classrooms," Congress directed the FCC to "take immediate action to accelerate deployment of such capability."[20]

Every year, eligible schools apply for E-rate funds for the discounts on the IT and broadband services to be provided to those schools. Each funding year runs from July 1 through June 30. Funding year 2021, for example, ran from July 1, 2021, through June 30, 2022. Funds are raised by periodic contributions to the Universal Service Fund from telecommunications carriers.

The FCC's rules require schools to seek competitive bids for the services they seek to purchase at a discount using E-rate funds. The most disadvantaged schools, where at least 75 percent of students are eligible for free or reduced-price school lunch, receive a 85 to 90 percent discount on eligible services, and thus pay only 10 percent of the cost of those services to the service providers. After a school enters into a contract for E-rate eligible services and timely files an application certifying it has complied with the E-rate rules, the FCC is required by

---

[19] *Id*. at 8883 ¶ 31.
[20] 47 U.S.C. § 1302(b).

section 254(h)(1)(B) of the Communications Act to utilize available E-rate funding for the discounts provided to the school under that contract.

Significantly, the FCC delegated the day-to-day management and administration of the E-rate program to the Universal Service Administrative Company ("USAC"), a private corporation. As a non-governmental body, USAC did not receive authority to create, change or interpret substantive rules and regulations. USAC can only adopt and follow administrative processes and procedures to implement the FCC's substantive rules. The FCC directed USAC to give "applicants certainty regarding a funding decision for those timely filed and complete requests by the beginning of [each] school year."[21]

### B.    Essential Network Technologies LLC

After being selected as the winning bidder in the competitive bidding process in multiple funding years starting in 2020, six schools or school districts entered contracts with Essential Network Technologies LLC for internal network services at discounted rates.[22] In each funding year between 2020 and 2023, USAC stopped issuing funds for discounts for one or more of those six schools.[23] During those years, USAC has failed to process requests for funds totaling $235,372.48 for discounts to be provided to these schools by Essential Network

---

[21] *Id*. at 8893 ¶ 59.
[22] Walsh Decl. ¶ 8.
[23] *Id.* ¶ 7.

Technologies LLC.[24] Those request for funds remain pending. Because of USAC's inaction during these years, rather than wait, three of the schools canceled their requests for funding for contracts with Essential Network Technologies, LLC valued at $151,452,67.

On February 3, 2022, USAC sent a letter to Essential Network Technologies LLC indicating USAC was reviewing discounts provided years ago to ten schools or school districts for managed internal broadband services.[25]  In addition to the customers for the 2021 funding year, USAC's letter stated its investigation "may result in a reduction, denial, or rescinding of funding" for discounted services provided to five specific schools.  On February 8, 2022, Essential Network Technologies LLC sent a response to USAC's letter.[26]

USAC's inconclusive investigation, which apparently started in 2020, has already caused irreparable injury to Essential Network Technologies LLC's business, resulting in the loss of schools as customers.[27] The atmosphere of uncertainty and speculation surrounding the USAC investigation has created a sense of apprehension among school administrators and staff.[28] USAC has thoroughly investigated each and all of these customers multiple times looking for

---

[24] *Id.* ¶ 8.
[25] *Id.* ¶ 10.
[26] *Id.* ¶ 11.
[27] *Id.* ¶ 16.
[28] *Id.*

something inappropriate that Essential Network Technologies LLC may have done wrong which has caused customers to either find alternate service providers, delay upgrading infrastructure, or acquire equipment from other service providers.[29]  Schools have informed Essential Network Technologies LLC that USAC investigators keep asking for the same information over and over again after they had already sent them everything they had from the request.[30] Rumors about the investigation are spreading, and the lack of resolution is further exacerbating the situation.[31]

Essential Network Technologies LLC will lose additional schools as customers unless USAC acts on all pending requests and issues funds for the schools' discounts by July 2024, before the start of the next school year.[32]  The anticipated loss of customers in July can be attributed to several factors.  One reason is the necessity for schools to find an alternative service provider due to the delayed funding caused by the USAC investigation.  One school has indicated it cannot afford Essential Network Technologies LLC's managed internal broadband services contract unless the school receives the discounts by July 2024 to help offset the cost.[33]  Due to aging network hardware causing technical problems for

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* ¶ 17.

[33] *Id.*

school staff and students, three other schools need certainty by July 2024 regarding funding to complete pending projects critical to resolving those technical problems.[34]  As schools are unable to prolong the implementation of essential projects, such as managed internal broadband *services*, they are left with no choice but to seek out other providers to move forward with their planned projects.

Essential Network Technologies LLC's ability to prepare an adequate defense to USAC's allegations is being seriously impaired by the FCC's unreasonable delay in concluding USAC's investigation.[35]  Key witnesses that would have supported Essential Network Technologies LLC's defense are either no longer employed, retired, or deceased.  Several key Essential Network Technology LLC's employees are no longer employed, and another is deceased.[36]  Furthermore, at least one key employee has left one of the schools for which USAC has stopped issuing funds to pay for the discounts.[37]

### C.     MetComm.Net, LLC

After being selected the winning bidder in the competitive bidding process in 2021, seventeen schools or school districts entered contracts with MetComm.Net, LLC for IT and broadband services at discounted rates.[38]  Since

---

[34] *Id.*

[35] *Id.* ¶ 19.

[36] *Id.*

[37] *Id.*

[38] Avi-No'am Decl. ¶ 11.

then, MetComm.Net, LLC provided and continues to provide discounted managed internet and internal broadband services to these schools, on the assumption (confirmed by 20 years of reimbursement experience) of reimbursement in a reasonable time frame. USAC initially committed to fund the schools' discounts but inexplicably stopped reimbursing MetComm.Net, LLC.[39] The total of pending reimbursements for discounted services provided is currently $1,046,827.00

As of July 2021, USAC has also not decided on 55 new E rate applications for reimbursement for schools that had selected MetComm.Net, LLC as their service provider totaling an additional $680,474.69. These applications, most of which are for program year 2023 but include applications for years 2020 through 2023, remain "Pending," with USAC indicating for most that they are "Waiting for Heightened Scrutiny."

Furthermore, in two letters dated December 11, 2023, USAC told the affected school that USAC intended to rescind the reimbursement of discounts already provided to MetComm.Net, LLC for eligible services provided in 2019 and 2021.[40]  On December 15, 2023, USAC emailed a letter denying any reimbursement of the discounts provided to another school for eligible services

---

[39] *Id.* ¶ 10.
[40] Two Letters from Bill Kanyuck, Special Compliance Reviewer, Universal Serv. Admin. Co., to Rafeek Mohamed, Islamic Elementary School (Dec. 11, 203).

MetComm.Net, LLC provided in 2021.[41]  These USAC notifications have rendered uncertain $27,019.39 in reimbursements to MetComm.Net, for discounts provided to these schools.[42]

On March 29, 2023, USAC sent a letter to MetComm.Net, LLC indicating USAC was reviewing discounts provided between 2011 and 2022 to ten schools for managed internal broadband services and that its investigation "may result in a reduction, denial, or rescinding of funding".[43] MetComm.Net, LLC completed the provision of managed internal broadband services to those ten schools in 2014, 2015, 2017, and 2018.[44]  While USAC reimbursed MetComm.Net, LLC for the discounts provided during these earlier years, USAC has stopped providing reimbursement for 2020 through 2022 for those and other schools not being investigated according to USAC's March 29, 2023, letter.[45]  It appears USAC has broadly stopped reimbursements as collateral against its investigation.   On July 30, 2023, MetComm.Net, LLC filed an appeal with USAC.[46]

---

[41] Letter from EPC.Application.Administrator@usac.org, Universal Serv. Admin. Co., to Dipa Rathod, MetComm.Net, LLC (Dec. 15, 2023).
[42] Avi-No'am Decl. ¶ 12.
[43] *Id.* ¶ 21.
[44] *Id.*
[45] *Id.*
[46] Letter from Jeffrey A. Mitchell, Esq., Mitchell Law, PLLC to Schs. and Librs. Div., Universal Serv. Admin. Co. (July 20, 2023); Avi-No' am Decl. ¶ 23.

Stopping all reimbursement for services provided in funding years 2020 through 2022, stopping 2022 and 2023 funding decisions, threatening to rescind reimbursements received for services provided many years ago, and perpetrating a far-reaching USAC investigation for services provided as long as 13 years ago has already caused irreparable injury to MetComm.Net, LLC's business, resulting in growing uncertainty among its schools and the possible loss of schools as customers.[47]  The uncertainty as to whether the schools will receive discounts or have their discounts rescinded before the 2024 school year begins has injured MetComm.Net, LLC's reputation and may cause schools to delay upgrading infrastructure, or find alternate providers of services and equipment.[48]  When funds needed to maintain broadband service and internet access are unexpectedly delayed or denied by USAC, this complicates an already lengthy and complex school budgeting process.  Since July of 2021 MetComm.Net, LLC has been burdened with subsidizing its schools' IT discounts without the statutorily mandated reimbursement. MetComm.Net, LLC will also likely lose schools as customers unless this Court directs the FCC and its agent, USAC, to provide reimbursement, resolve pending applications, and conclude USAC's investigations so schools can plan now for the 2024 school year.[49]

---

[47] Avi-No'am Decl. ¶ 24.

[48] *Id.*

[49] *Id.*

The unreasonable delay in the FCC's administrative process, including USAC's grossly delayed investigations, has also deprived MetComm.Net, LLC of its Constitutional right to due process by impairing its ability to defend itself.  Due to the failure of the FCC and USAC to render decisions within a reasonable time, MetComm.Net, LLC has been prejudiced by the unavailability of witnesses, the dimming of memories, changed personnel, and the deaths of personnel.[50] Key individuals at several schools who could have helped MetComm.Net, LLC's defense against USAC's allegations have either retired, died, or have left the schools.[51]

## SUMMARY OF THE ARGUMENT

At issue in this proceeding is whether the FCC and its non-government agent, USAC, had the authority to stop processing the reimbursement of discounts for IT and broadband services provided to schools by MetComm.Net, LLC and contracted to be provided by Essential Network Technologies LLC in light of section 254(h)(1)(B) of the Communications Act, 47 U.S.C. § 254(h)(1)(B).  Also, at issue is whether the FCC's failure to conclude numerous extended USAC investigations within a reasonable time violated the APA and the Due Process Clause of the Fifth Amendment to the U.S. Constitution by seriously impairing the

---

[50] *Id.* ¶ 26.
[51] *Id.*

ability of MetComm.Net, LLC and Essential Network Technologies LLC to adequately defend themselves against USAC's unspecified allegations. This is not an ordinary agency delay case, but instead is a case in which the FCC has a duty to act and is failing its statutory reimbursement duty while embroiling the schools and their service providers in endless proceedings before a private company, USAC, that lacks any authority to decide the legal issues involved.

In enacting section 254(h)(1)(B), Congress did not authorize the FCC or USAC to stop the reimbursement process before a final FCC decision resolving the legal issues. Congress instead commanded service providers "shall" enter into contracts with eligible schools who request services and "shall" "receive reimbursement" for discounted services to those schools. To the extent USAC has applied FCC's rules 54.707(a) and 54.725(a) to Essential Network Technologies LLC and MetComm.Net, LLC, those rules cannot condition or nullify Congress' reimbursement command in section 254(h)(1)(B) or amend that statutory provision. In addition to its statutory duty, the FCC also had a contractual obligation to issue funds for the discounts provided by Essential Network Technologies LLC and MetComm.Net, LLC after they accepted Congress' offer for funding in section 254(h)(1)(B) by entering contracts with the schools for the provision of eligible services at a discount.

If the petition to review in this case is denied, this case seeks, in the alternative, mandamus relief compelling the FCC to comply with the duties Congress set forth in the Communications Act and the APA. The issuance of a writ under 28 U.S.C. § 1651(a) is necessary to preserve this Court's appellate jurisdiction, as it will be impossible for this Court in the future to reverse the irreparable injury that will continue to result from the FCC's unreasonable delay and failure to timely issue funds for the schools' discounts. Mandamus relief is necessary to prevent further irreparable injury to numerous schools, hundreds of students, their service providers (MetComm.Net, LLC and Essential Network Technologies LLC), and the public interest.

When, as here, agency recalcitrance is in the face of a clear statutory duty, this Court should order the agency to carry out its substantive statutory mandate. Considering the great and obvious damage that has been and will continue to be suffered, the importance of the rights asserted, and the lack of any other remedy, this Court should direct the FCC and its agent, USAC, to: (1) carry out its clear statutory duty under 47 U.S.C. § 254(h)(1)(B) to promptly issue funds for the discounted services contracted for and/or provided by Essential Network Technologies LLC and MetComm.Net, LLC, (2) conclude the USAC investigations within 90 days, and (3) report in writing the FCC decisions concluding the USAC investigations as mandated by 47 U.S.C. §§ 154(k) and 404.

## STANDING

The United States Constitution limits the exercise of judicial power to certain "cases and controversies."[52]  Under the doctrine of "standing," a federal court can exercise judicial power only where a petitioner has demonstrated it (1) has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the respondent; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[53]  When the party is "an object of the action … at issue ... there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."[54]

Here, Essential Network Technologies LLC and MetComm.Net, LLC have demonstrated actual, concrete, and particularized injury of fact that is fairly traceable to the FCC's conduct and is redressable by a favorable judicial ruling.  They have lost income from USAC's and the FCC's actions in stopping the funding for discounts for managed internal broadband services they already contracted to provide to numerous schools years ago.[55]  They have also lost schools

---

[52] U.S. Const. art. III, § 2.
[53] *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992).
[54] *Id*. at 561-62.
[55] Walsh Decl. ¶ 9; Avi-No'am Decl. ¶ 10.

as customers and suffered injury to their reputations due to the stopping of reimbursement.[56]  Furthermore, the FCC's unreasonable delay in concluding USAC's investigations has significantly prejudiced the ability of Essential Network Technologies LLC and MetComm.Net, LLC to defend themselves against USAC's allegations.[57]  A favorable court decision in this case will prevent additional losses and further injury that are likely to result if the stop in reimbursement continues.  Therefore, Essential Network Technologies LLC and MetComm.Net, LLC have established Article III standing.

## ARGUMENT

I.    **Section 254(h)(1)(B) of the Communications Act Prohibits the FCC and its Non-Government Agent, USAC, From Stopping Funds for the Discounts on Services that Have Already Been Promised Under Contracts with the Schools.**

The APA authorizes this Court to "compel agency action unlawfully withheld," and to "set aside agency action…not in accordance with law."[58]  After a contract for IT or broadband service is accepted by an elementary or secondary school "at rates less than the amounts charged for similar services to other parties," Congress commanded that the discounts "shall" "receive reimbursement" from the FCC's Universal Service Fund.  47 U.S.C. § 254(h)(1)(B).  So long as a school has

---

[56] Walsh Decl. ¶ 16; Avi-No'am Decl. ¶ 16.
[57] Walsh Decl. ¶ 19; Avi-No'am Decl. ¶ 26.
[58] 5 U.S.C. § 706.

entered into a contract for a discount on eligible services, Congress did not impose any other condition or qualification, such as a pending appeal or USAC investigation, that would authorize USAC or the FCC to stop issuing funds for the schools' discounts prior to a final FCC decision. Furthermore, a contractual relationship with the United States was established by statute when the government offered to reimburse private parties for costs associated with the E-rate program, and the private parties accepted the offer by complying with section 254(h)(1)(B) and entering contracts for the discounted services.[59]

As evidenced by the *Rulings Under Review*,[60] the FCC and its agent, USAC, stopped processing requests or issuing funds for the discounts provided to schools that selected Essential Network Technologies LLC and MetComm.Net, LLC, and threatened to rescind funding for discounted services already provided under contracts to numerous schools.[61] The FCC and its agent, USAC, apparently relied

---

[59] *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1 (1977) (holding that acceptance of an offer in a statute can establish a contract); *Maine Cmty. Health Options v. United States*, 143 Fed. Cl. 381, 402 (2019) (finding an implied-in-fact contract under provisions of the Affordable Care Act under which private healthcare providers agreed to engage in a cost-sharing program involving reimbursement of some expenses associated with providing healthcare).

[60] *Rulings Under Review, supra* note 7.

[61] The Debt Collection Improvement Act ("DCIA") is not germane to the analysis of the decision by the FCC and USAC to stop reimbursement. The DCIA applies only to funds "owed to the United States." 31 U.S.C.§ 3701(b)(1). "Administrative offset" is also only authorized for money an "entity owes the Government" and "due to the United States." 47 C.F.R. § 1.1901(a) and (e). All the funds used to reimburse discounts are received from telecommunications

upon FCC rules 54.707(a) and 54.725(a) as authority to stop processing requests or issuing funds for the schools' discounts.[62]  However, those rules cannot condition or nullify Congress' reimbursement command in section 254(h)(1)(B) or amend that statutory provision.  Therefore, as applied in this case to Essential Network Technologies LLC and MetComm.Net, LLC, FCC rules 54.707(a) and 54.725(a) should be set aside as not in accordance with section 254(h)(1)(B) of the Communications Act.

This Court should also compel the FCC and its non-government agent, USAC, to promptly process requests and issue funds for the discounts sought by schools who contracted with Essential Network Technologies LLC and MetComm.Net, LLC because the FCC and USAC have unlawfully withheld timely payments which Congress mandated by section 254(h)(1)(B).  Judicial review and the relief requested by this petition cannot wait until after USAC completes its investigations and all administrative appeals, as the FCC's failure to provide timely reimbursement has already caused significant irreparable injury to the public

---

carriers and none of it comes from the United States or the Government. Furthermore, USAC is neither the Government nor the United States, but instead a separate legal entity and private company. USAC, rather than the United States, holds legal title to and dominion over the Universal Service Fund.  *In re Incomnet, Inc.,* 463 F.3d 1064, 1073 (9th Cir. 2006) (USAC "holds legal title to the funds in the USF accounts").

[62] 47 C.F.R. §§ 54.707(a) and 54.725(a).

interest, and further delay will compound that injury.[63]   Essential Network

Technologies LLC and MetComm.Net, LLC have lost schools as customers, and

will continue to do so, unless this Court enjoins the FCC and USAC from

withholding funds for the schools' discounts.[64]   Several schools have threatened to

abandon their contracts with Essential Network Technologies LLC and

MetComm.Net, LLC unless funds are issued for the schools' discounts before the

beginning of the school year this Fall.[65]   Furthermore, numerous schools, their

students, and the public will continue to suffer irreparable injury, and will continue

to be denied affordable high-speed broadband service and critical IT infrastructure,

unless the Court grants this petition.[66]

## II.     The Failure of the FCC to Render a Decision Regarding USAC's Investigations Within a Reasonable Time Has Violated the APA and the Procedural Rights Guaranteed by the Fifth Amendment to the U.S. Constitution.

Agency action shall be set aside if it is unlawful,[67] "which of course includes

unconstitutional action."[68]   The Due Process clause of the Fifth Amendment

---

[63] Walsh Decl. ¶ 21; Avi-No'am Decl. ¶ 27.

[64] Walsh Decl. ¶ 17; Avi-No'am Decl. ¶ 24.

[65] *Id*.

[66] Walsh Decl. ¶ 21; Avi-No'am Decl. ¶ 27.  Nothing in this request prevents USAC or the FCC from auditing these reimbursements after the fact. What USAC is doing now is auditing *before* the reimbursements have been made, in violation of the will of Congress.

[67] 5 U.S.C. § 706.

[68] *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009).

provides that no person shall "be deprived of life, liberty, or property, without due process of law."[69] "[D]elay in the resolution of administrative proceedings can also deprive regulated entities, their competitors or the public of rights and economic opportunities without the due process the Constitution requires."[70] In enacting 5 U.S.C. § 555(b), Congress has determined, as a matter of public policy, administrative agencies such as the FCC must act in a reasonable time frame.[71]

Three factors must be considered when determining whether the FCC's administrative procedures are constitutionally sufficient: (1) the private interest that will be affected, (2) the risk of an erroneous deprivation of such interest and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest.[72] The extent to which procedural due process must be afforded the recipient depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication.

Essential Network Technologies LLC and MetComm.Net, LLC have satisfied all three elements. First, Essential Network Technologies LLC and MetComm.Net, LLC have a significant property interest in receiving E-rate

---

[69] U.S. Const. amend. V.

[70] *MCI Telecomms. Corp. v. FCC*, 627 F.2d at 341.

[71] 5 U.S.C. § 555(b) states in pertinent part: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

[72] *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970).

funding for the discounts on IT and broadband services they have provided or contracted to provide to numerous schools. That financial assistance is a matter of statutory entitlement.[73] The Universal Service Fund Program provides the means for elementary and secondary schools to obtain essential IT and broadband services at an affordable price. "From its founding the Nation's basic commitment has been to foster the dignity and well-being of all persons within its borders."[74] The private interests in receipt of funds for the discounts provided to schools are exceptionally strong.

As for the Government's interest, universal service is the FCC's primary mandate under the Communications Act of 1934, as amended.[75] Section 1 of the Communications Act requires the Commission to "regulat[e] interstate ... commerce in communication by wire and radio so as to make available, so far as possible, to all people of the United States a rapid, efficient, Nationwide and worldwide wire and radio communication service with adequate facilities at reasonable charges."[76] USAC's decision impairs important rights affecting the public interest—*i.e.* access by elementary and secondary schools to affordable

---

[73] 47 U.S.C. §§ 254(b)(6) and 254(h)(1)(B)
[74] *Goldberg*, 397 U.S. at 264-65.
[75] *Nat'l Ass'n of Regul. Util. Comm'rs v. FCC*, 737 F.2d 1095, 1108 (D.C. Cir. 1984).
[76] 47 U.S.C. § 151.

telephone and broadband services.[77]  Stopping E-rate funds pending resolution of USAC's investigations into services provided as long as thirteen years ago deprives access to affordable IT and broadband service for numerous schools while they wait.[78]  Thus, the interest in uninterrupted receipt of reimbursement, coupled with the government's interest that funding is not erroneously terminated, clearly outweighs USAC's competing interest in reducing the overall demand for E-rate funding.

The FCC's practice of stopping E-rate funds for the schools' discounts, followed by burying funding requests in the administrative process for several years, poses a profound possibility of erroneous deprivations.  The stakes are simply too high for schools and their students, and the possibility for honest error or misjudgment too great, for the FCC to stop discount reimbursement based upon USAC's alleged investigation of services provided three to thirteen years ago.  An erroneous forfeiture of funding could cause significant hardship for schools and the public who may be entirely dependent upon discounts to afford access to critical IT and broadband services.  Indeed, without adequate IT and broadband, an affordable

---

[77] Walsh Decl. ¶ 21; Avi-No'am Decl. ¶ 19.

[78] USAC is allegedly investigating services MetComm.Net, LLC provided under contracts with schools as long ago as 2011.  Avi-No'am Decl. ¶ 21.  Essential Network Technologies LLC provided managed internal broadband services under contracts with schools in 2021 that are still allegedly under investigation by USAC. Walsh Decl. ¶ 10.

quality education for many students may be at stake.  Therefore, the funding of discounts for IT and broadband services provided to schools now and in the future by Essential Network Technologies LLC and MetComm.Net, LLC deserves full due process protection.

The unreasonable delay in the FCC's administrative process, including USAC's grossly delayed investigations, has deprived Essential Network Technologies LLC and MetComm.Net, LLC of their Constitutional right to due process by impairing their ability to defend themselves against USAC's unfounded allegations.  Due to the failure of the FCC and USAC to render decisions within a reasonable time, Essential Network Technologies LLC and MetComm.Net, LLC have been prejudiced by the unavailability of witnesses, the dimming of memories, changed personnel, and deaths of personnel.[79] Key individuals who could have helped Essential Network Technologies LLC's defense against USAC's allegations have either retired, died, or no longer work at the schools or Essential Network Technologies LLC.[80]  Key individuals at schools served by MetComm have retired, left schools, or are now deceased. Therefore, this Court should vacate USAC's Rulings Under Review and related investigations for failing to provide sufficient process before depriving Essential Network Technologies LLC and

---

[79] Walsh Decl. ¶ 20; Avi-No'am Decl. ¶ 26.
[80] Walsh Decl. ¶ 19; Avi-No'am Decl. ¶ 26.

MetComm.Net, LLC of their protected property interests in discount

reimbursement.

**III.    If this Court Denies the Petition to Review, the Court Should Grant a Writ of Mandamus Directing the FCC to Comply with its Statutory Duties to Reimburse Discounts and Promptly Render an FCC Decision Regarding USAC's Investigations.**

A petitioner seeking mandamus must establish that the agency has violated a

clear duty, that there is no other adequate means to attain the requested relief, and

that there are compelling equitable grounds for granting the writ.[81] Under section

254(h)(1)(B) of the Communications Act, the FCC has a clear duty to timely issue

funds for the schools' discounts after IT and broadband services have been

contracted for or provided to elementary and secondary schools "at rates less than

the amounts charged for similar services to other parties."[82]  The FCC also has a

clear duty under section 555(b) of the APA "to conclude" USAC's investigations

"within a reasonable time."  Furthermore, the FCC has a clear duty to make written

reports regarding the FCC's final decision regarding USAC's investigations.  47

U.S.C.  §§ 154(k) and 404.

If the petition to review in this case is denied, this case seeks, in the

alternative, mandamus relief compelling the FCC to comply with its duties that

---

[81] *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (citations omitted).
[82] 47 U.S.C. § 254(h)(1)(B).

Congress set forth in the Communications Act and the APA.  A writ of mandamus is the only adequate alternative remedy should this Court deny the petition to review in this case.  The issuance of a writ under 28 U.S.C. § 1651(a) is necessary to preserve this Court's appellate jurisdiction, as it will be impossible for this Court in the future to reverse the irreparable injury that will continue to result from the FCC's unreasonable delay and failure to promptly issue funds for discounts provided to elementary and secondary schools.  The sole question, then, is whether there are equitable grounds to grant mandamus relief.

On the equities, the most important factor is the "rule of reason" governing the time it takes an agency to make a decision.[83]  The Communications Act and the APA "supply content for th[e] rule of reason."[84]  After a school has entered into a contract for discounted IT or broadband services for the upcoming school year, Congress mandated reimbursement using the language of command, "shall." Nothing in section 254(h)(1)(B) of the Communications Act permits USAC or the FCC to interrupt or alter Congress' timeline through delays or stopping E-rate funding.  Furthermore, Congress directed any USAC or FCC investigation to be concluded within "a reasonable time."  5 U.S.C. § 555(b).  Congress then directed

---

[83] *Telecomms. Rsch. & Action Ctr. (TRAC) v. FCC*, 750 F.2d at 80.
[84] *Id.*

the FCC to memorialize its decisions regarding USAC's investigations in written reports.  47 U.S.C.  §§ 154(k) and 404.

USAC and the FCC have flouted the rule of reason and the plain timeline set by Congress by stopping E-rate funds for discounts promised under contracts with schools three and four years ago, and delaying any FCC decision that could be appealed to this Court.[85]  "A reasonable time for agency action is typically counted in weeks or months, not years."[86]  Also weighing in favor of mandamus is the serious detrimental impact on our nation's educational system, and the children they teach, resulting from years of FCC non-compliance with section 254(h)(1)(B)'s reimbursement command and even further unreasonable FCC delay in concluding USAC's investigations.[87]   Mandamus relief is necessary to prevent further irreparable injury to numerous schools, hundreds of students, their service providers (MetComm.Net, LLC and Essential Network Technologies LLC), and the public interest.

This petition requests a writ directing the FCC to carry out its clear statutory duty under 47 U.S.C. § 254(h)(1)(B) to promptly issue funds for discounts provided by Essential Network Technologies LLC and MetComm.Net, LLC.  This

---

[85] Walsh Decl. ¶ 7; Avi-No'am Decl. ¶ 10.

[86] *In re Pub. Emps. For Env't Resp*., 957 F.3d 267, 274 (D.C. Cir. 2020) (citation and internal quotations omitted).

[87] "Delay is 'less tolerable when human health and welfare' is at stake."  *In re Ctr. for Biological Diversity*, 53 F.4th at 671(quoting *TRAC*, 750 F.2d at 80).

petition also requests this Court direct the FCC within 90 days to render decisions regarding USAC's investigations and to carry out its clear duty under 47 U.S.C. §§ 154(k) and 404 to report those decisions in writing.

<u>**CONCLUSION**</u>

The FCC has violated, and continues to violate, its clear statutory duty to promptly issue funds for the discounts provided by Essential Network Technologies LLC and MetComm.Net, LLC under contracts entered years ago for IT and broadband services to numerous elementary and secondary schools. Furthermore, the FCC's unreasonable delays in concluding USAC's investigations has seriously impaired Essential Network Technologies LLC's and MetComm.Net, LLC's ability to adequately defend themselves against USAC's allegations, contrary to their due process rights guaranteed by the Constitution. The FCC's non-compliance with its statutory and constitutional duties is causing immediate, irreparable injury to the public, denying affordable high-speed internet access that is essential to modern day education and resulting in the loss of schools as customers of Essential Network Technologies LLC and MetComm.Net, LLC. Therefore, to avoid further irreparable injury, this Court should require the FCC to promptly issue funds for the schools' discounts and render written decisions concluding USAC's investigations.

Respectfully submitted,

/s/  James U. Troup

James U. Troup

Fletcher, Heald and Hildreth

1300 17th Street North, Suite 1100

Arlington, VA 22209

Tel:   (703) 812-0442

Fax:   (703) 812-0486

Email: troup@fhhlaw.com

*Attorney for ESSENTIAL NETWORK TECHNOLOGIES LLC AND METCOMM.NET, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) and 32(c)(2) because this petition contains 7,747 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).  This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface 14-point Times New Roman font.

/s/ James Troup
James Troup

Date:  February 14, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, James U. Troup, do hereby certify that on this 14th day of February 2024,

copies of the foregoing Petition to Review, or Alternatively, Petition for Writ of

Mandamus to Compel Agency Action Unreasonably Delayed were served via

certified mail, return receipt, on the following parties:

P. Michele Ellison
General Counsel
Federal Communications Commission
45 L Street NE
Washington, DC 20554

The Honorable Merrick B. Garland
Attorney General
United States Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530

/s/ James U. Troup_____<br>James U. Troup